Melvyn L. DURHAM,. Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA; Loyola Marymount University; and Does 1–100, inclusive, Defendants,

Case No. 2:16–cv–08202–ODW(KSx)

United States District Court, C.D. California.

Signed 02/15/2017

Daniel Mitchell Graham, Daniel M. Graham APC, Torrance, CA, for Plaintiff.

Linda Marie Lawson, Jason A. James, Meserve Mumper and Hughes LLP, Los Angeles, CA, for Defendant.

ORDER GRANTING, DEFENDANTS'
MOTION TO DISMISS [10] AND
DENYING PLAINTIFF'S MOTION
TO REMAND [11]

OTIS D. WRIGHT, II, UNITED
STATES DISTRICT JUDGE

## I. INTRODUCTION

Plaintiff Melvyn L. Durham alleges that Defendants The Prudential Insurance Company of America ("Prudential") and Loyola Marymount University ("LMU") wrongfully denied him disability benefits. Plaintiff filed a complaint in state court asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendants removed the case to federal court, arguing that the Employee Retirement Income Security Act of 1974 ("ERISA") completely preempts Plaintiff's state law claims. Plaintiff contends that the benefit plan at issue is a "church plan," and thus exempt from ERISA. Defendants now move to dismiss Plaintiff's First Amended Complaint based on ERISA preemption, and Plaintiff moves to remand the case based on lack of subject matter jurisdiction and the existence of a forum selection clause. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion to Remand, and **GRANTS** Defendants' Motion to Dismiss. (ECF Nos. 10, 11.) [1]

## II. BACKGROUND

For approximately thirteen years, LMU employed Plaintiff as a Craft Shop Manager. (First Am. Compl. ¶ 10, ECF No. 1–5.) During this time, Plaintiff participated in a long-term disability plan administered by Prudential. (Id. ¶ 11.) Plaintiff alleges that Defendants wrongfully denied him benefits under the plan. (See id. ¶¶ 12–18.) In September 2016, Plaintiff filed this action in state court. (ECF No. 1–2.) Three weeks later, Plaintiff filed a First Amended Complaint, in which he asserted state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (First Am. Compl. ¶¶ 19–29.) Plaintiff specifically alleged that the benefit plan is a church plan as defined under ERISA, pointing to LMU's mission statement describing the university as "institutionally committed to Roman Catholicism" and stating that its "Catholic identity and religious heritage distinguish LMU from other universities and provide touchstones for understanding our threefold mission." (Id. ¶ 9.)

Defendants timely removed this action to federal court. (ECF No. 1.) In their Notice of Removal, Defendants contend that ERISA completely preempts Plaintiff's state law claims, thereby conferring federal question jurisdiction. (Not. of Removal ¶¶ 5–17.) Defendants also submitted a declaration from LMU's Vice President of Human Resources stating that while LMU is "affiliated with the Catholic Church, [it] is not a church in and of itself, is not operated by the Catholic Church, and does not receive most of its funding from the Catholic Church." (Chandler Decl. ¶ 4, ECF No. 1–11.) Thus, Defendants contend, the benefit plan at issue is not a church plan under ERISA. (Not. of Removal ¶¶ 21–23.) [2]

---

1. After considering the papers filed in connection with both Motions, the Court deemed them appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7–15.

2. Defendants also contended that there is diversity jurisdiction because LMU, the only non-diverse party, was fraudulently joined. (Not. of Removal ¶¶ 24–38.) As the Court concludes that there is federal question jurisdiction based on complete preemption, the Court need not decide whether there is also diversity jurisdiction.

After removal, Defendants moved to dismiss Plaintiff's claims based on ERISA preemption. (ECF No. 10.) Plaintiff then moved to remand the action to state court based on lack of subject matter jurisdiction and the existence of a forum selection clause in the benefit plan. (ECF No. 11.) Both parties opposed the other's Motion. (ECF Nos. 14, 16.) Those Motions are now before the Court for decision.

### III. MOTION TO REMAND

 Federal courts have subject matter jurisdiction only as authorized by the Constitution and by Congress. U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Federal courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a). A defendant may remove a case from state court to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). The removal statute is strictly construed against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

Plaintiff advances three reasons why the Court should remand this case: (1) the benefit plan at issue is a "church plan," and thus Plaintiff's state law claims are not preempted by ERISA; (2) ERISA preemption does not in any event prohibit the particular state law claims in this matter; and (3) the benefit plan contains a forum selection clause that requires disputes arising therefrom to be litigated in state court. (ECF No. 11–1.) The Court finds none of these reasons persuasive.

### A. Complete Preemption Under ERISA

 Under the well-pleaded complaint rule, the court determines the existence of federal question jurisdiction by looking at the plaintiff's claims rather than the defendant's defenses. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). Thus, a federal defense—such as preemption—typically does not give rise to federal question jurisdiction. *Id.* The only exception is where "a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* Federal question jurisdiction exists in those instances because the plaintiff's claim, "even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 207–08, 124 S.Ct. 2488 (internal quotation marks omitted). The Supreme Court has adopted a two-part test for determining whether ERISA completely preempts state law claims: "if (1) 'an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B),' and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'" *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009) (quoting *Davila*, 542 U.S. at 210, 124 S.Ct. 2488).

#### 1. First Prong of *Davila*

 Under § 502(a)(1)(B), a participant in or beneficiary of a "plan" may bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). ERISA defines "plan" to include an "employee welfare benefit plan," *id.* § 1002(3), and in turn defines "employee welfare benefit plan" as "any plan, fund, or program .... established or

maintained by an employer or by an employee organization . . . for the purpose of providing for its participants or their beneficiaries . . . disability . . . benefits." *Id.* § 1002(1). Here, Plaintiff alleges that he was covered under a plan maintained by LMU, his employer, that provides eligible employees with long-term disability benefits, and that he was wrongfully denied disability benefits under that plan. (First Am. Compl. ¶¶ 11–18.) Thus, the plan qualifies as an "employee welfare benefit plan," § 1002(1), and the wrongful denial of benefits under that plan entitles Plaintiff to bring an action under § 502(a)(1)(B).

Plaintiff does not dispute this, but rather argues that the plan is nonetheless exempt from ERISA as a "church plan." *See* 29 U.S.C. § 1003(b)(2) ("The provisions of this subchapter shall not apply to any employee benefit plan if such plan is a church plan . . . ."). ERISA defines a "church plan" as "a plan *established* and *maintained* . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches." 29 U.S.C. § 1002(33)(A) (emphasis added). ERISA further provides:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan *maintained* by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

29 U.S.C. § 1002(33)(C)(i) (emphasis added). For shorthand, the Court refers to such organizations as "principal purpose organizations."

Plaintiff's main argument with respect to ERISA's church plan exemption is that under subsection (33)(C)(i), a plan is a "church plan" if it is *maintained* by a principal purpose organization, regardless of who- or whatever initially *established* the plan. (Mot. to Remand at 5–6.) Plaintiff argues that LMU is a principal purpose organization that maintains the plan, and thus it qualifies as a "church plan." (*Id.*) Plaintiff argues in the alternative that if the Court reads ERISA to require that the plan also be established by a church, LMU *is* in fact a church. (*Id.*) Both arguments fail.

### i. Whether a Church Plan Must be Established by a Church

The Third Circuit, Seventh Circuit, and Ninth Circuit have each held that "a plan must have been [1] established by a church *and* [2] maintained either by a church or by a principal-purpose organization" in order to qualify for the church plan exemption; it is insufficient that the plan is simply maintained by a principal purpose organization. *Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir. 2016), *cert. granted,* —— U.S. ——, 137 S.Ct. 547, 196 L.Ed.2d 442 (2016); *see also Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175, 180–81 (3d Cir. 2015); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 523–27 (7th Cir. 2016). Plaintiff argues that the Ninth Circuit's opinion in *Rollins* is not binding on this Court because the Supreme Court stayed the case pending resolution of the petition for writ of certiorari. *See Dignity Health v. Rollins,* —— U.S. ——, 137 S.Ct. 28, 195 L.Ed.2d 901 (2016). After briefing on this Motion was complete, the Supreme Court granted certiorari, and thus the stay remains in effect until the Court issues its judgment. *See id.; Dignity Health v. Rollins,* —— U.S.

——, 137 S.Ct. 547, 196 L.Ed.2d 442 (2016).

 Plaintiff's argument is unpersuasive for two reasons. First, it is not clear that the Supreme Court's stay disturbs the precedential effect of *Rollins*. The granting of a writ of certiorari always acts to stay enforcement of the circuit court's judgment. *See Waskey v. Hammer*, 179 F. 273, 274 (9th Cir. 1910) ("A certiorari to a subordinate court or tribunal operates as a stay of proceedings from the time of its service or of formal notice of its issuance."). Nonetheless, the default rule (at least in the Ninth Circuit) is that "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Thus, it appears that a stay of proceedings pending Supreme Court review does not normally affect the precedential value of the circuit court's opinion. As there is no indication that the particular stay in *Rollins* was greater in scope than that normally imposed when writs of certiorari issue,[3] the Court assumes the stay was not intended to disturb the default rule regarding the binding effect of the circuit court's opinion pending Supreme Court review. Second, even if *Rollins* is no longer binding authority due to the Supreme Court's stay, it is at the very least persuasive authority. And because the Court finds both its reasoning

and the reasoning of the Third and Seventh Circuits persuasive, the Court concludes that a plan is not a church plan unless it is established by a church. *Rollins*, 830 F.3d at 905; *Kaplan*, 810 F.3d at 180–81; *Stapleton*, 817 F.3d at 523–27.

### ii. Whether LMU is a "Church"

Plaintiff argues half-heartedly that LMU is itself a "church," and thus the disability plan at issue qualifies as a church plan even under *Rollins*. (Mot. to Remand at 5.) In support of this argument, Plaintiff points to various websites highlighting LMU's affiliation with the Catholic Church. (Graham Decl., Exs. 1–2, ECF No. 11–2; Graham Decl., Exs. A–D.) Defendants respond by pointing to the declaration of LMU's Vice President of Human Resources, wherein she states that while LMU is "affiliated with the Catholic Church, [it] is not a church in and of itself." (Chandler Decl. ¶ 4.)[4]

 ERISA does not appear to define what constitutes a "church." Moreover, whether an institution is a "church" appears to be a question of fact rather than a question of law. *See Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) ("[T]he existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person."); *see Torres v. Bella Vista Hosp., Inc.*, 523 F.Supp.2d 123, 135 (D.P.R. 2007)

---

3. While the Supreme Court likely issued the stay initially under 28 U.S.C. § 2101(f), that subsection authorizes a stay only for the purpose of "obtain[ing] a writ of certiorari from the Supreme Court." Now that the Court has granted the writ, it does not appear that this statute supplies the basis for the continuance of the stay. Moreover, the Court in any event would not construe a stay under § 2101(f) to affect the precedential value of the circuit court's opinion either.

4. The Court declines to rule on Plaintiff's objections to paragraphs 1–3 of Chandler's declaration as the Court does not rely on the facts in those paragraphs to which Plaintiff objects. (ECF No. 11–3.) With respect to paragraph 4, the Court overrules Plaintiff's objections. Defendants' evidence is not inadmissible just because it contradicts Plaintiff's evidence.

(whether a plan is a church plan is a question of fact). Normally, a court may weigh evidence and resolve factual disputes concerning the court's subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (brackets, citations, and internal quotation marks omitted). However, the court cannot do so where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Id.* In those situations, the court must instead apply "the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits. Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014) ("[A] court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim.").

Here, there is no doubt that the question whether the plan is a "church plan" is central to both the Court's jurisdiction and the merits of the action, because ERISA both provides the basis for the Court's subject matter jurisdiction and a complete affirmative defense to Plaintiff's state law claims. *See, e.g., Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 910 (9th Cir. 1997) ("[T]he existence of an ERISA plan ... [is a] factual determination[ ] necessary to establish both the merits of the Trustees' claims and ERISA jurisdiction."); *Zeiger v. Zeiger*, 131 F.3d 150 (9th Cir. 1997) (unpublished) ("Because [the

plaintiff] brought her action under ERISA, the issue of whether the court had subject matter jurisdiction under that statute was intertwined with the merits of her claims."); *Torres*, 523 F.Supp.2d at 135; *Puccio v. Standard Ins. Co.*, No. 12-CV-04640-JST, 2013 WL 1411155, at *4 (N.D. Cal. Apr. 8, 2013) ("[T]he jurisdictional question is significantly intertwined with the underlying facts of the case because ERISA provides the basis for both subject matter jurisdiction and Puccio's claim for relief."). Consequently, the Court should apply a summary judgment-like standard, and remand the case only if the plaintiff establishes that there is no genuine dispute that the welfare benefit plan is not an ERISA plan.

Plaintiff has far from established this. LMU submits a declaration attesting that it is not a church, that it hires both Catholic and non–Catholic professors, and that it receives funding from sources outside the Catholic Church. Plaintiff's evidence, on the other hand, has little or no tendency to show that LMU is a church. For example, Plaintiff submits evidence suggesting that LMU has a church on campus, but this does not mean the university is itself a church. (*See* Graham Decl., Ex. A–C, ECF No. 18.) Plaintiff also refers to LMU's mission statement and two statements regarding LMU's history, but they at best show that LMU is simply affiliated with the Catholic Church. (*See* First Am. Compl. ¶ 9; Graham Decl., Exs. 1–2, ECF No. 11–2; Graham Decl., Ex. D, ECF No. 18.) Thus, Plaintiff clearly has not established the absence of a genuine dispute as to whether the plan at issue is church plan; to the contrary, the evidence submitted heavily suggests that the plan is not a church plan.

In sum, Defendants have shown that "an individual, at some point in time, could have brought [the] claim under ERISA

§ 502(a)(1)(B)," thus satisfying the first prong of *Davila*. 542 U.S. at 210, 124 S.Ct. 2488.

### 2. Second Prong of *Davila*

 The second prong of *Davila* requires that there be no other independent legal duty implicated by the defendant's actions. Plaintiff argues that "[a]ll individuals have a general duty not to engage in tortious conduct ... [t]herefore, Plaintiff has a legal right to assert emotional distress claims." (Opp'n at 9–10.) This argument borders on frivolous. The purported "tortious conduct" giving rise to Plaintiff's emotional distress claim is the denial of benefits. Defendants' duties with respect to reviewing and deciding benefit claims in ERISA-governed benefit plans are covered exclusively by ERISA. There simply is no independent duty implicated by Defendants' actions here. *See Davila*, 542 U.S. 200, 213, 124 S.Ct. 2488, 159 L.Ed.2d 312 (holding that there is no independent legal duty where "potential liability ... derives entirely from the particular rights and obligations established by the benefit plan[ ]"); *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir. 1998) ("ERISA preempts state common law tort and contract causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan."). Consequently, the Court concludes that Plaintiff's claims are completely preempted by ERISA.

### B. Forum Selection Clause

 As an alternative argument for remand, Plaintiff claims that the benefit plan contains a forum selection clause requiring that claims arising under the plan be litigated in California state court. (Mot. to Remand at 2–4.) The Court disagrees.

 A federal court may remand a case to state court based on a forum selec-

tion clause. *See, e.g., Kamm v. ITEX Corp.*, 568 F.3d 752, 757 (9th Cir. 2009); *Pelleport Inv'rs, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276 (9th Cir. 1984). In the Ninth Circuit, courts interpret forum selection clauses under federal common law. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009); *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Id.* Where the language of a forum selection clause is "plain and unambiguous," the court must enforce the clause as worded without reference to extrinsic evidence. *Doe 1*, 552 F.3d at 1081.

Plaintiff points to a provision in the insurance contract between LMU and Prudential stating that the contract is to be "governed by the laws of the Governing Jurisdiction." (Petrone Decl., Ex. 1, ECF No. 1–7.) The contract then identifies the "Governing Jurisdiction" as the State of California. (*Id.*) However, the law governing the interpretation of the contract has nothing to do with *where* a lawsuit arising under the contract may be brought. Moreover, it is not clear that this language even applies to benefit determinations under the plan. The contract in which Plaintiff finds this language is between LMU and Prudential, not the beneficiary. The plan summary issued to the beneficiary, in contrast, repeatedly refers to the rights and obligations of both the beneficiary and the plan administrator under ERISA, *not* state law. (*See generally* Petron Decl., Ex.

**1150**

3.) In short, the Court is not persuaded that the language Plaintiff points to mandates a state court forum for denial of benefit claims.[5]

## C. Attorneys' Fees and Costs

■■ Plaintiff seeks an award of attorneys' fees and costs in the amount of $10,750 on the basis that Defendants' removal of the case was frivolous. (Mot. to Remand at 10.) Because the Court declines to remand the action, the Court also denies Plaintiff's request for fees and costs. *See* 28 U.S.C. § 1447(c) (authorizing fees and costs only where the court remands the case).

## IV. MOTION TO DISMISS

Defendants move to dismiss Plaintiff's state law claims based on ERISA preemption. (*See generally* ECF No. 10.) Defendants argue that Plaintiff has not pleaded sufficient facts to show that the church plan exemption applies. (Mot. to Dismiss at 10 & n.5; Reply at 2–4.) The Court agrees.

### A. Legal Standard

■■ A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

at 679, 129 S.Ct. 1937. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

■■ "Ordinarily[,] affirmative defenses may not be raised by motion to dismiss." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). The only exception is where the defendant can establish the affirmative defense through either facts that the plaintiff had pleaded or facts that are subject to judicial notice. *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (noting that motions to dismiss based on affirmative defenses are "rare because a plaintiff is not required to say anything about [the facts concerning affirmative defenses] in his complaint"); *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (same).

### B. Preemption

■■■ ERISA's preemption provision provides in relevant part: "[t]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The analysis under this provision is generally a two-step inquiry. "The first question is . . .

---

5. To the extent this provision could be construed as a choice-of-law provision, *see Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir. 1993), the Court considers any such argument waived.

whether 'the ... policy is itself subject to ERISA regulation as an ERISA plan.'" *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 875 (9th Cir. 2001) (quoting *Demars v. CIGNA Corp.*, 173 F.3d 443, 445 (1st Cir. 1999)); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) ("[U]nder the plain language of § 514(a) the Court has held that only state laws that relate to benefit *plans* are pre-empted." (emphasis in original)). This first step, in turn, involves two sub-inquiries: (1) whether the plan is an "employee benefit plan described in section 1003(a)," and (2) whether the plan is "not exempt under section 1003(b)." 29 U.S.C. § 1144(a). Once the court determines that the plan is an ERISA plan, "[t]he second question is whether [the plaintiff's] state-law claims are so related to an ERISA plan that they are preempted." *Waks*, 263 F.3d at 875.

At issue here is the first step of the inquiry—in particular, whether the church plan exemption under § 1003(b) applies. Defendants do not argue that Plaintiff's allegations affirmatively establish that the benefit plan is *not* church plan; rather, Defendants argue that Plaintiff has not adequately alleged that it *is* a church plan.[6] Thus, while they do not address the issue, Defendants' argument turns on who has the burden to plead and prove the existence or non-existence of the church plan exemption. For the reasons discussed below, the Court concludes that Plaintiff bears the burden of proof on that issue.

**1. Burden of Proof**

 ERISA preemption, like all preemption doctrines, is generally an affir-

mative defense. *See, e.g., Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n.4 (9th Cir. 1988); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) ("ERISA preemption in a benefits-due action is an affirmative defense."); *Dueringer v. Gen. Am. Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir. 1988); *John Muir Health v. Cement Masons Health & Welfare Trust Fund for N. Cal.*, 69 F.Supp.3d 1010, 1013 (N.D. Cal. 2014). Moreover, because the defendant usually bears the burden of pleading and proving an affirmative defense, *see, e.g., Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), courts usually cannot grant motions to dismiss based on such defenses, *Albino*, 747 F.3d at 1169. That said, a full preemption analysis occasionally implicates issues on which the plaintiff bears the burden of proof—the most common example being the burden of establishing an applicable savings clause. *See Duluth, Winnipeg & Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008) (holding that, under the Railway Safety Act, "[i]t is the burden of the party advocating preemption ... to show that a federal law, regulation, or order covers the same subject matter as the state law, regulation, or order it seeks to preempt. If that showing is made, the burden shifts to the party resisting preemption to prove that the state law, regulation, or order meets all three requirements of the savings clause ...." (citations omitted)); *BNSF Ry. Co. v. Swanson*, 533 F.3d 618, 621 (8th Cir. 2008) (following *City of Orr*); *Carter v. Novartis Consumer Health, Inc.*, 582 F.Supp.2d 1271, 1288 (C.D. Cal. 2008) (holding that, under the Food, Drug, and Cosmetic Act, once defendants "have met

---

**6.** Defendants also argue that the evidence submitted by the parties in support of and in opposition to the Motion to Remand establish that LMU is not a church. (Mot. to Dismiss at 10; Reply at 3 nn.4–5.) However, such evi-

dence cannot be considered on a motion to dismiss. *See, e.g., Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) (court cannot consider declarations on a motion to dismiss).

their initial burden of demonstrating that the express preemption clause applies, the onus shifts to Plaintiffs to prove that their state law claims satisfy the savings clause"). And where the plaintiff fails to meet its burden, dismissal based on preemption may be appropriate. *See Carter*, 582 F.Supp.2d at 1288 (dismissing state law products liability claim based on FDCA preemption because the plaintiff failed to meet its burden of showing that any applicable savings clause applied).

Likewise here, the first step of the preemption analysis involves an issue on which the plaintiff should bear the burden of proof: whether the plan is exempt under § 1003(b). Generally, the burden of pleading and proving exemptions or exceptions rests on the party asserting such. For example, in the context of exemptions to prohibited transactions under ERISA, both the Ninth Circuit and the Seventh Circuit have held that it is the proponent of such an exemption—in those cases, the defendant—to plead and prove its existence. *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016); *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2015), *rev'd on other grounds*, —— U.S. ——, 136 S.Ct. 758, 193 L.Ed.2d 696 (2016). The Seventh Circuit noted that it made sense to treat the exemptions as affirmative defenses because "exemptions from prohibited transactions ... assume that a transaction in the prohibited group occurred, and they add additional facts showing why that particular one is acceptable." *Allen*, 835 F.3d at 676. The Seventh Circuit also found it unduly burdensome to force plaintiffs to "negate all [prohibited transaction] exemptions in their complaints." *Id.* at 677. There are numerous other contexts in which pleading and proving an exception to the general rule rests on the proponent of that exception. *See, e.g., Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1130 (C.D. Cal. 2010)

(plaintiff has the burden of pleading and proving delayed discovery under California law to avoid a statute of limitations defense); *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 77 Cal.Rptr.2d 537, 959 P.2d 1213 (1998) (in the context of insurance coverage, the insured has the burden of establishing that the "its claim is within the basic scope of insurance coverage," but the insurer has the burden of proving the existence of an exclusion to coverage); *Arreola v. Cty. of Monterey*, 99 Cal.App.4th 722, 760, 122 Cal.Rptr.2d 38 (2002) (once the plaintiff establishes causation in a negligence claim, burden shifts to defendant to establish the existence of a superseding cause of plaintiff's injury).

Although here the parties' roles are reversed (i.e., it is the plaintiff advocating for the exemption rather than the defendant), the same burden-shifting principle still applies. That is, once a defendant asserting ERISA preemption establishes that the plan qualifies as an "employee benefit plan" under § 1003(a), the burden should shift to the plaintiff to show that one of the five exemptions under § 1003(b) applies. These exemptions assume that the plan otherwise qualifies as an "employee benefit plan"; they then add additional facts to establish that the plan is nonetheless not subject to ERISA. *See* 29 U.S.C. § 1003(b)(1) (exemption for employee benefit plans that are run by a state or federal government); *id.* § 1003(b)(2) (exemption for employee benefit plans that are established and maintained by a church); *id.* § 1003(b)(3) (exemption for employee benefit plans that constitute workers' compensation plans or unemployment compensation); *id.* § 1003(b)(4) (exemption for employee benefit plans that are "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens"); *id.* § 1003(b)(5) (exemption for employee

benefit plans that constitute an excess benefit plan). The opponent of such an exemption should not have to plead and prove that each and every exemption under § 1003(b) is *inapplicable*.

█ In sum, the Court concludes that where the defendant asserts ERISA preemption as an affirmative defense, the plaintiff has the burden of pleading and proving any applicable exemption under § 1003(b).

### 2. Analysis

█ Based on this framework, the Court concludes that Plaintiff's claims are preempted. First, as previously noted, Plaintiff has pleaded facts demonstrating that the benefit plan at issue constitutes an "employee benefit plan" under § 1003(a), *see supra* pp. 4–5, and Plaintiff does not attempt to argue otherwise. Second, Plaintiff has not pleaded sufficient facts to show that the plan at issue is a "church plan" for the purposes of the church plan exemption. As previously noted, under *Rollins*, the church plan exemption applies only where the plan was "established by a church." 830 F.3d at 905. Plaintiff does not, however, plausibly allege that the plan was established by a church. Instead, Plaintiff (1) recites a portion of LMU's mission statement, which provides that LMU is "institutionally committed to Roman Catholicism" and has a "Catholic identity and religious heritage," and (2) makes the conclusory allegation that "the application of ERISA is precluded because the Plan involved in this Action is deemed to be a *church plan*." (First Am. Compl. ¶ 9 (emphasis in original).) Neither is sufficient. As previously noted, while LMU's mission statement may tend to show that LMU is affiliated with the Catholic Church, it does not plausibly show that LMU is itself a church. *See Stapleton*, 817 F.3d at 520 ("[i]t goes without saying" that a hospital that is simply "affiliated with" the Lutheran Church and the United Church of Christ, and that does not require that "employees or patients belong to any particular religious denomination[ ] or uphold any particular religious beliefs," is not a church). Moreover, the bare assertion that the plan at issue is a church plan is simply a legal conclusion, which the Court need not accept as true. *Sprewell*, 266 F.3d at 988.

Finally, the Court concludes that this action "relates to" the benefit plan. "[T]he Supreme Court has instructed that a law relates to an employee benefit plan if it has either a 'connection with' or 'reference to' such a plan." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) (citations omitted). Here, Plaintiff simply seeks benefits allegedly owed to him under the plan, as well as related damages for emotional distress arising from the denial of benefits. Such claims obviously "relate to" the benefit plan. *See, e.g., Gibson v. Prudential Ins. Co. of Am.*, 915 F.2d 414, 417 (9th Cir. 1990) ("All [of] Gibson's claims arise from her efforts to attain disability benefits under the Plan in 1982. Her complaint alleges violations of duties created by the administration of the disability benefit plan. She is not claiming that Prudential or the doctors had any duty to her outside the proper administration of the benefit plan. There would be no relationship or cause of action between the appellees and Gibson without the Plan. Thus, in this case, the claim originates from the handling and disposition of Gibson's claim for disability benefits and is directly connected with the Plan."); *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010) ("Wise's state law claims are preempted because her complaint necessarily references an ERISA plan. The state law theories of fraud, misrepresentation, and negligence all depend on the existence of an ERISA-covered plan to demonstrate that

Wise suffered damages: the loss of insurance benefits. Because Wise must allege the existence of an ERISA plan to state her claims under Washington law, the claims are preempted."). Plaintiff does not contend otherwise. As a result, the Court concludes that Plaintiff's claims are preempted.

## C. Leave to Amend

 "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other [consistent] facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted). Here, the court determines that Plaintiff cannot plead any set of facts that would establish that LMU is a church and thus that the church plan exemption applied. As more fully discussed above, none of the facts that Plaintiff points to in his briefing papers gives rise to even a plausible inference that LMU is a church. *See Sprewell*, 266 F.3d at 988 (court need not accept "unwarranted deductions of fact[ ] or unreasonable inferences" in a complaint); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (court need not accept plaintiff's factual conclusions and deductions where there is "an obvious alternative explanation" for the facts). Moreover, the Court also cannot conceive of any facts Plaintiff could allege that would plausibly establish that LMU is a church. Thus, it would be futile to give Plaintiff leave to attempt to assert such facts. And because the church plan exemption is the only basis on which Plaintiff argues that his state law claims are not preempted, the Court dismisses those claims entirely without leave to amend. The Court will instead grant Plaintiff leave to assert a claim under ERISA.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 11.) However, the Court **GRANTS** Defendants' Motion to Dismiss with leave to amend. (ECF Nos. 10, 11.) Plaintiff shall file an amended complaint within seven days consistent with this order.

**IT IS SO ORDERED.**